IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CONSTANCE HUGHES,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 09 C 6558 |
| **UNITED AIR LINES, INC.,** | ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Constance Hughes ("Hughes") sued United Air Lines, Inc. ("United") in the Circuit Court of Cook County, Illinois, alleging a claim for retaliatory discharge in violation of the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1 *et seq*. United removed the litigation to this Court and now moves pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the suit for lack of subject-matter jurisdiction. Hughes has filed a motion to remand the case to Illinois state court. For the reasons explained below, I deny Hughes's motion to remand and grant United's motion to dismiss.

**I.**

Prior to the events giving rise to this suit, Hughes was employed by United as a flight attendant. In January 2003, she began a voluntary furlough pursuant to the union contract under which she was employed. In October 2004, she was recalled from the

furlough and instructed to return to work.  According to her complaint, Hughes was suffering at the time from medical conditions and injuries (the nature of which is generally unspecified in the complaint), and that, as a result, she was placed on an extended medical furlough.  She later filed a worker's compensation claim under Illinois' Workers' Compensation Act.

In May 2007, Hughes received a letter from United notifying her that she was expected to return to work by October 2007.  Before resuming her former position, she was required to undergo requalification training.  During the course of the training -- about one week prior to the date on which she was scheduled to return to work -- Hughes claims that she slipped and fell as she was entering United's training facility due to snow and water that had accumulated at the bottom of the building's stairs.  As a result, she claims, she "fractured a tooth, scratched her right thumb and knuckle, hit her head and injured her shoulder." Compl. ¶ 23.

The complaint alleges that when Hughes contacted United to inform them that she planned to take additional medical leave time as a result of these injuries, United advised her that she had no more medical leave time available.  In January 2008, she received a notice advising her that her employment was being terminated because her medical leave of absence had expired and because she had failed to complete the requirements necessary before returning

to work.

In September 2009, Hughes filed the instant complaint in Cook County Circuit Court. Her suit alleges that she was terminated in retaliation for the worker's compensation claim she had filed. United subsequently removed the suit to this Court pursuant to 28 U.S.C. § 1441. Hughes subsequently filed a motion to remand for lack of federal subject-matter jurisdiction. United filed a motion to dismiss, arguing that the suit is governed by the Railway Labor Act ("RLA" or "the Act"), 45 U.S.C. § 151 *et seq.*, and must therefore be adjudicated by a special arbitration panel. I consider each of these motions in turn.

## II.

**A. Motion to Remand**

I first consider Hughes's motion to remand the case to Illinois court, for if Hughes is correct in claiming that the suit was improperly removed, I am without jurisdiction to consider United's motion to dismiss. I conclude that the suit was properly removed. Accordingly, I deny Hughes's motion to remand.

Under 28 U.S.C. § 1441, a defendant may remove a case to federal court if the case contains a basis for federal subject-matter jurisdiction. 28 U.S.C. §§ 1441(a), 1446. The party seeking removal has the burden of proving the existence of federal jurisdiction. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004). "The presence or absence of federal-question

jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). As a result, a federal defense to a state law cause of action typically does not provide sufficient grounds for federal jurisdiction. *See, e.g., Smart v. Local 702 Intern. Broth. of Elec. Workers*, 562 F.3d 798, 803 (7th Cir. 2009). Significantly, this rule applies even where the defendant asserts a federal preemption defense. *See, e.g., Pollitt v. Health Care Serv. Corp.*, 558 F.3d 615, 616 (7th Cir. 2009). However, under the so-called "artful pleading doctrine," courts recognize an exception to the well-pleaded complaint rule in cases where "federal law *completely* preempts a plaintiff's state-law claim." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475-76 (1998) (emphasis added). In such complete preemption cases, "any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

Given this framework, it is clear that Hughes's motion to remand must be denied. Hughes is correct in maintaining that no basis for federal jurisdiction is discernable from the face of her complaint. However, the Seventh Circuit has held that the RLA completely preempts claims such as Hughes's. *See, e.g., Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1344-46 (7th Cir. 1986);

*Leu v. Norfolk & W. Ry. Co.*, 820 F.2d 825, 830 (7th Cir. 1987) (plaintiffs' state law fraud and conversion claims were preempted by the RLA); *see also Monroe v. Missouri Pac. R. Co.*, 115 F.3d 514, 516 (7th Cir. 1997) (wrongful discharge suit removed from Illinois court and dismissed on basis of RLA preemption); *Hammond v. Terminal R.R. Ass'n of St. Louis*, 848 F.2d 95, 97 (7th Cir. 1988) ("If [a] complaint states a claim that is removable, such as a claim under the Railway Labor Act, removal is not defeated by the fact that, after the case is removed, the plaintiff files a new complaint, deleting the federal claim or stating a claim that is not removable."). Under the artful pleading doctrine, therefore, the RLA's application to the dispute constitutes a valid basis for removal.

It is true that some Courts of Appeals have reached a different conclusion. *See, e.g.*, *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("We agree that the RLA does not provide a basis for finding complete pre-emption in this case and that, as a result, Alaska's removal on the grounds of the RLA's governing this action was improper."); *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 277 (2d Cir. 2005). It is also true that some district courts in this Circuit have questioned *Graf*'s continued vitality, *see, e.g.*, *Lynch v. Bialcik*, No. 08-C-1127, 2009 WL 2058861, at *2 (E.D. Wis. July 14, 2009) (stating that "*Graf* is twenty-three years old . . . and since then courts have

been increasingly stingy in applying the complete preemption doctrine"), or have ignored *Graf* and its progeny entirely, *see Childs v. Hoffman*, No. 94 C 628, 1994 WL 72264, at *1 (N.D. Ill. Mar. 7, 1994) ("It is not until defendant's petition for removal that any reference is made to the Railway Labor Act, which is not enough to give this court jurisdiction."). Nevertheless, there can be little question that *Graf* remains good law in this Circuit.

Since the RLA completely preempts claims such as Hughes's, I conclude that federal jurisdiction exists over the suit and that removal was therefore proper. Thus, I deny Hughes's motion to remand.

**B. Motion to Dismiss**

I turn now to United's motion to dismiss Hughes's complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). United argues that Hughes's claim ultimately cannot be decided in this Court, because the RLA requires that Hughes's suit be submitted to a board of adjustment for arbitration. I agree.

"Concerned that labor disputes would lead to strikes bringing railroads to a halt, Congress enacted the Railway Labor Act in 1926 to promote peaceful and efficient resolution of those disputes." *Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, --- S. Ct. ----(2009); *see also*

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994).[1]  The "RLA establishes a mandatory arbitral mechanism for the prompt and orderly settlement of two classes of disputes -- major disputes and minor disputes."  *Brown v. Illinois Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001) (quotation marks omitted).  "Major disputes" are those that "relate to the formation of collective bargaining agreements or efforts to secure them."  *Id.*  In contrast, "minor disputes" are ones that "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," or that "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation."  *Id.* (quotation marks, brackets, and citations omitted).

Under the RLA, major disputes can be immediately litigated in federal court.  However, minor disputes are governed by arbitration panels referred to as "system boards" or "boards of adjustment."  *See, e.g., Weathersby v. Union Pac. R. Co.*, No. 01 C 0264, 2003 WL 22038584, at *3 (N.D. Ill. Aug. 28, 2003); *see also* 45 U.S.C. § 184 (describing the jurisdiction of system boards of adjustment and the

---

[1] The Railway Labor Act was originally passed in 1926 to "avoid any interruption to commerce or to the operation of any railroad engaged therein caused by labor-management disputes." *Stephens v. Ret. Income Plan for Pilots of U.S. Air, Inc.*, 464 F.3d 606, 609 (6th Cir. 2006) (quotation marks and brackets omitted).  The Act was extended in 1936 to cover the airline industry.  *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994).

manner in which they are to be established). Hence, to the extent that Hughes's claim constitutes a minor dispute for purposes of the RLA, I am without subject-matter jurisdiction over her suit.

The Seventh Circuit has explained that a dispute is "minor" for purposes of the RLA, where (1) the applicable collective bargaining agreement ("CBA") provides the "only source" of a plaintiff's rights or (2) where "the adjudication of plaintiff's state-law claim would involve interpretation or application of a CBA." *Monroe*, 115 F.3d at 517. The Seventh Circuit has also instructed that "courts should characterize a dispute as minor if it is even 'arguably justified' that the dispute turns on the application of the CBA." *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 583 (7th Cir. 1999).

United argues that Hughes's retaliatory discharge claim constitutes a "minor dispute" under the RLA because adjudicating the claim would require interpretation or application of the parties' CBA. In support of its claim, United cites *Monroe v. Missouri Pacific Railroad Co.* There, the plaintiff took a medical leave of absence after sustaining an injury while on the job. 115 F.3d at 515. Monroe's employer later put him under surveillance during his medical leave to see whether he was indeed unable to work. *Id.* The defendants eventually discovered that Monroe had been working at his father's business while on medical leave. *Id.* A CBA hearing was held to determine whether Monroe had been guilty

of misrepresenting his physical condition during his medical leave, and his employment was ultimately terminated. He responded by filing a lawsuit alleging that his employer had fired him in an attempt to prevent him from asserting personal injury claims under the Federal Employers Liability Act ("FELA"). *Id.* at 516.

The district court dismissed Monroe's FELA claim after concluding that adjudicating the claim would require application and interpretation of the CBA. *Id.* On appeal, Monroe argued that the claim presented purely factual questions about the railroad's reason for firing him and that the suit would in no way implicate the CBA. *Id.* at 518. The Seventh Circuit disagreed. The court listed several ways in which Monroe's claims would require interpretation of the agreement *Id.* For example, the court observed that Monroe's claim would require the application and interpretation of the CBA's standards "regarding an employee's physical condition . . . when analyzing Monroe's claim of pretextual discharge." *Id*. The court also noted that Monroe's claims involved "past and future wages, benefits, and promotions -- all of which are determined by the CBA." *Id.*

*Monroe* compels the same result here. As in *Monroe*, the relief Hughes seeks is tied to benefits that she claims are due to her under the CBA -- for example, compensation for loss of seniority and anticipated future benefits. Compl. ¶ 44. *Monroe* held that because the plaintiff sought such relief, litigating the suit would

require interpretation and application of the CBA, and that, as a result, Monroe's claim represented a "minor dispute" for purposes of the RLA. By precisely the same reasoning, Hughes's claim is also a "minor dispute" under the RLA.

Another central feature of Hughes's suit is her contention that United's stated reason for firing her -- namely, that she failed to fulfill all of the requirements necessary for her to return to work -- was pretextual. Hughes insists that she completed all of the requirements found in the CBA, and that United is attempting to impose on her an additional "unknown duty" beyond the agreement. Compl. ¶ 30. In order to assess this claim, it will undoubtedly be necessary to interpret the CBA's requirements.

The two cases that Hughes cites in support of her position are not to the contrary. Hughes first cites *Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316 (7th Cir. 1994). There, the plaintiff had been employed as a cake-cutter for Sky Chefs, an airline food service provider, until she developed carpel tunnel syndrome. *Id.* at 317. She filed a worker's compensation claim and took a two-year leave of absence pursuant to the CBA under which she was employed. *Id.* When she tried to return to work, her employer refused, claiming that Westbrook suffered from high blood pressure. *Id.* Westbrook argued that she had suffered from high blood pressure even before taking her sick leave and that her employer's refusal to let her return was pretextual. *Id.* In particular, she claimed that Sky

Chefs was seeking to retaliate against her for having filed a worker's compensation claim. *Id.* Westbrook therefore filed a retaliatory discharge action against Sky Chefs under the IWCA. The Seventh Circuit held that Westbrook's claim was not preempted by the CBA. *Id.* at 318. In announcing its conclusion, the court cited the fact that "the CBA is not the only source of plaintiff's right not to be discharged wrongfully." *Id.* (citations and brackets removed). In addition, the court observed that "the plaintiff alleged violation of state law independent of the CBA." *Id.*

*Sky Chefs* is readily distinguishable from this case. As the foregoing recounting makes clear, the court in *Sky Chefs* did not employ the complete test for determining the RLA's application. Indeed, in *Monroe*, the Seventh Circuit explicitly highlighted the limited and partial character of *Sky Chefs*' analysis. Specifically, the court observed:

> *Sky Chefs* relied upon only one aspect of the RLA preemption standard set out in *Hawaiian Airlines* and *Lingle* -- whether a CBA provided the only source for a plaintiff's wrongful discharge claim. Here, we have the occasion to address a second facet of the *Hawaiian Airlines-Lingle* standard -- whether the adjudication of a plaintiff's claim requires interpretation of a CBA. Our *Sky Chefs* decision should not be narrowly construed to eliminate this latter, and crucial, element of the *Hawaiian Airlines-Lingle* preemption standard.

*Monroe*, 115 F.3d at 519 (citations omitted).

Notably, here, as in *Monroe*, it is the second facet of the RLA

-11-

preemption standard that is at issue. As discussed above, the RLA applies to Hughes's suit because adjudicating her claim would entail interpreting or applying provisions of the CBA under which she was employed. Since *Sky Chefs* involved only the first facet of the standard -- i.e., whether the CBA provided the "only source" of the plaintiff's claim -- its holding in no way suggests that Hughes's suit is not governed by the RLA.

Hughes's second case, *Kelley v. Norfolk & S. Ry. Co.*, 80 F. Supp. 2d 587 (S.D. W.Va. 1999), is even less persuasive. *Kelley* held that the plaintiff's state law claim was not preempted by the RLA. However, the claim at issue in that case was for intentional infliction of emotional distress, not, as here, for retaliatory discharge. As a result, the court in *Kelley* noted that adjudicating the plaintiff's claim would not require the application and interpretation of CBA, but would instead focus on the factual question of whether the defendant's conduct was intentional. Here, as noted above, in order for Hughes to show that her termination was pretextual, she will be required to show that she complied with the CBA.

In short, I conclude that Hughes's claim is a "minor dispute" within the meaning of the RLA. As such, the RLA requires that the dispute be addressed by a system board of adjustment, not by means of litigation in federal court. Since I lack jurisdiction over her suit, I grant United's motion to dismiss.

### III.

For the reasons discussed above, I deny Hughes's motion to remand and I grant United's motion to dismiss.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: December 21, 2009